IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01168-WJM-KMT

PATRICIA HOBDY,

        Plaintiff,

v.

WELLS FARGO BANK, National Association,

        Defendant.

---

**WELLS FARGO BANK, N.A.'S MOTION TO STRIKE EXPERT DESIGNATION OF DR. CLAYTON LEWIS**

---

Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") moves to strike Plaintiff Patricia Hobdy's designation of Dr. Clayton Lewis as an expert, whose opinions do not meet the requirements described in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) and its progeny.

**I.    BACKGROUND**

Plaintiff contends that if Wells Fargo had provided her with voice recognition software, she would have performed better and, in turn, her employment would not have been terminated. Plaintiff has retained Dr. Clayton Lewis to opine on the effectiveness of voice recognition software. **Exhibit A**, November 2015 emails between Nathan Davidovich (Plaintiff's counsel) and Dr. Lewis. Dr. Lewis' opinions lack any of the elements of reliability required by *Daubert* and its progeny.

When Mr. Davidovich first contacted Dr. Lewis, Mr. Davidovich explained, "[t]he case involves whether the employer, Wells Fargo, should have considered a reasonable accommodation of voice recognition software to my client, because of the difficulty and inability

1

to type because of pain in her wrists and hands." Ex. A at p. 2. In response, Dr. Lewis explained that he did not have the expertise to opine on that issue. Specifically, Dr. Lewis responded, "I don't have specific experience with it, and know nothing of Wells Fargo's system." *Id.* at p. 1.

Undeterred, Mr. Davidovich retained Dr. Lewis on November 16, 2017. *Id.* at p. 4. Dr. Lewis then completed his "expert" report on November 30, 2017, which Plaintiff disclosed on December 4, 2017. **Exhibit B**, Plaintiff's Expert Disclosure including Dr. Lewis's curriculum vitae (**Exhibit B-1**) and report (**Exhibit B-2**). After Dr. Lewis' deposition, Wells Fargo's counsel asked Plaintiff's counsel to withdraw Dr. Lewis' expert designation, and provided an analysis of the problems with Dr. Lewis' designation as an expert. *See* **Exhibit C** at p. 2. In response, Dr. Lewis presented a Supplemental Report on February 22, 2018, approximately a month and a half after his deposition. **Exhibit D**, Dr. Lewis's Supplemental Report.

Dr. Lewis's original and supplemental reports, and his deposition testimony, do not include a single opinion that would be helpful to the trier of fact in this matter. Nor has Dr. Lewis considered any information specific to Plaintiff in rendering any opinions. Indeed, as detailed below, he admits that he has no knowledge of Plaintiff's health issues, or whether she actually needs or would benefit from voice recognition software. In fact, he admits that he does not even know what Plaintiff's position was or what her position entailed. But, perhaps more importantly, even if he had made any attempt to learn a single thing about Plaintiff's health condition or what her typing needs were in her position, Dr. Lewis fully admits that he has never actually performed a stitch of research concerning voice recognition software (or VRS). And even more confounding is the fact that Dr. Lewis admitted under oath that **his report does not contain a single thing beyond what he collected in publicly available internet sites, which he listed in his report**.

Key portions of Dr. Lewis' deposition follow.

Ex. E, Dr. Lewis Dep., at 18:10-25:[1]

> Q. Did any of your research or professional activities or publications have anything to do with VRS?
> A. At a high level, yes. So a major theme in my work is exploiting the flexibility of computer technology to support people with disabilities, and that covers a wide range, including -- one of the subtechnologies is voice recognition or speech-to-text technology.
> Q. You clarified that answer by stating "at a high level."
> A. Yeah. **So I haven't done research personally on that technology**, but I have considered it as part of the broad trend of the use of computer technology to support people with a wide range of disabilities. (Emphasis added.)

Ex. E, Dr. Lewis Dep., at 19:9-11:

> Q. I assume that none of your publications specifically address VRS?
> A. **That's right**. (Emphasis added.)

Ex. E, Dr. Lewis Dep., at 24:10-25:5:

> Q. So if I understand your testimony, you had a call early on with Nate in the beginning of November around the 6th or 7th and then a call for approximately 15 minutes discussing the ground rules for this deposition. Any other calls that you can remember?
> A. No.
> Q. **Have you ever spoken to Patricia Hobdy?**
> A. **No.**
> Q. Did you ever ask to?
> A. No.
> Q. **Did you think that that was important for your report?**
> A. **No**.
> Q. Why not?
> A. My expertise is the appropriateness of the technology for someone with difficulty typing. I view that as a straightforward matter.
> Q. **Do you have any firsthand knowledge of whether Ms. Hobdy, in fact, has difficulty typing?**
> A. **No, I do not.** (Emphasis added.)

---

[1] A true and correct copy of the pertinent portions of Dr. Lewis's deposition transcript are attached at **Exhibit E**. Emphasis added when bolded.

Ex. E, Dr. Lewis Dep., at 25:11-26:3:

> Q. Other than Nate, have you discussed the case with anybody else?
> A. Very early on I was in a meeting with Gregg Vanderheiden. You'll see a brief note about that in my notes. Gregg is a colleague with whom I've worked over the years on a variety of matters.
> Q. And what did you discuss with him?
> A. His perspective on voice recognition software.
> Q. Do you know his title?
> A. He is a professor at the University of Maryland.
> Q. Do you think he has more experience regarding voice recognition software?
> A. Yes. He has more than I do, yes.
> Q. And why do you say that?
> A. **Because as we've discussed, this isn't a matter that I've personally done research on.** (Emphasis added.)

Ex. E, Dr. Lewis Dep., at 26:15-19:

> Q. **And as far as you can recall, did you review any medical records?**
> A. **No.**
> Q. **Did you review any doctors' notes?**
> A. **No.** (Emphasis added.)

Ex. E, Dr. Lewis Dep., at 29:1-7:

> Q. **Do you have any personal knowledge as to whether Ms. Hobdy can or cannot use her hands?**
> A. **No.**
> Q. **What did you understand to be Ms. Hobdy's position at Wells Fargo?**
> A. **Don't have any particular understanding of it.** (Emphasis added.)

Ex. E, Dr. Lewis Dep., at 29:23-30:5:

> Q. Do you have an opinion as to whether Ms. Hobdy suffered from a significant repetitive stress injury?
> A. I don't.
> Q. Do you have an opinion as to whether Ms. Hobdy suffers from a significant injury to or amputation of the upper extremities?

    A.    I don't.

Ex. E, Dr. Lewis Dep., at 30:6-18:

    Q.    **Were you aware Ms. Hobdy was released to return to work full duty without any restrictions as of October 14, 2015?**
    A.    **Something to that effect might have been said in some of the material that I reviewed, but it doesn't play a role in my opinion.**
    Q.    **Why not?**
    A.    **My opinion is about the appropriateness of speech recognition technology for people with difficulty typing while using a computer.**
    Q.    **Is your report in any way geared towards Ms. Hobdy in particular?**
    A.    **No.**  (Emphasis added.)

Ex. E, Dr. Lewis Dep., at 33:16-18:

    Q.    And you don't have firsthand knowledge about the interface features of Wells Fargo's systems?
    A.    I do not.

Ex. E, Dr. Lewis Dep., at 34:18-35:5:

    Q.    These opinions set forth in 1-a through 1-f, are those your complete opinions in this case?
    A.    Yes.
    Q.    I see that you have listed several Internet sites to go to that you used in preparing your report?
    A.    Yeah.
    Q.    **What information are you providing in your report that I would not be able to glean just by going to those websites?**
    A.    **If you went to those websites, if you knew to find them and if you understood the content of them, nothing.**  (Emphasis added.)

        Dr. Lewis' reports and deposition testimony make exceedingly clear that he does not have information that will assist the jury. Instead, he would only serve as a mouthpiece to testify about what the internet says about voice recognition software. Because Dr. Lewis has no expertise in voice recognition software, because he has not provided a bona fide expert report,

5

and because his testimony will only confuse, not assist, the jury, he should not be permitted to provide expert testimony at trial or in connection with motions practice.

## II.   ARGUMENT

### A.   Dr. Lewis' Testimony Should Be Excluded.

#### 1.   Dr. Lewis' Report Does Not Comport With Federal Rule Of Evidence 702 Or *Daubert*.

The admissibility of all expert testimony is governed by the principles of Federal Rule of Evidence 104(a).  *See* Advisory Committee Notes to Fed. R. Evid. 702.  The proponent of the expert report has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of evidence.  *See id.* (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)).

Federal Rule of Evidence 702 states that a witness who is qualified as an expert may testify in the form of an opinion or otherwise if:  "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court charged trial judges, the gatekeepers of expert testimony, with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *See also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).  In addition, courts may exclude expert testimony if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  *See* Fed. R. Evid. 403.  Based on this standard, Dr. Lewis's report should be rejected, and he should be excluded from providing opinions concerning voice recognition software, as it is clear that he has no specialized

knowledge that will help the trier of fact and his testimony is not based on sufficient facts or data.

### a. Dr. Lewis' Report Is Not Expert Testimony, And His Analysis Will Confuse, Rather Than Assist, The Jury.

In *Kumho Tire*, the Court stated "whether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest 'upon an experience confessedly foreign in kind to [the jury's] own.'" *Kumho Tire Co., Ltd.*, 526 U.S. at 149.  Dr. Lewis' report accomplishes none of these things; instead, he has simply excerpted information from publicly available internet sources and has not applied, or even attempted to apply, that information to the specific facts of Plaintiff's case as demonstrated above.

In his report, all of Dr. Lewis' opinions come directly from five internet sites.  Ex. B-2 at pp. 3-4.  As demonstrated above, Dr. Lewis admits that "[i]f you went to those websites, if you knew to find them and if you understood the content of them," then his report has absolutely nothing to add.  This is confirmed by careful review of each of the six "opinions" contained in his report. Opinion 1(a) merely states that "[s]peech recognition software is a common accommodation for people who are unable to use their hands . . . ."  Other than a reference to a publicly available website, Dr. Lewis provides no support for this contention, no testimony that has himself has expertise to support or explain the opinion, and certainly does not advise how or why speech recognition software would be an appropriate accommodation for *this* Plaintiff. Opinion 1(b) states that "[t]he popular speech recognition program Dragon provides speech commands for controlling the computer's operating system and applications," and then quotes fifty-two words from the cited website.  Critically, as one can see from the deposition testimony

7

quoted above at page 33, lines 16-18, Dr. Lewis admits that he has done no work to learn about Wells Fargo's electronic systems, and, therefore, <u>he is unable to say whether the Dragon software he found on the internet even works with Wells Fargo's systems</u>.

Opinion 1(c) merely states that Microsoft Windows operating systems provides an option for speech commands, which he again supports with a quote directly from the cited website. Of course, he has no information about which versions of Windows do and do not have that functionality, and at the time he submitted his original report, no information as to whether the systems Plaintiff used at Wells Fargo even used Windows as an operating system and, if they did, which version they used.

Opinion 1(d) discusses possible tools to permit speech recognition, but again, does not tie it in any way to Wells Fargo's systems since he did not have any understanding of Wells Fargo's systems and what they are or are not capable of. Opinion 1(e) merely provides publicly available pricing information, and Opinion 1(f) discusses the potential for set-up work that may be needed for interface features, but again, fails to consider the systems utilized by Plaintiff at Wells Fargo and how they might be impacted.

Dr. Lewis's Supplemental Report, Exhibit D, fares no better. Points 1 and 2 revert back to his original report; point 3 states, "[w]ithout more information about these items, it is not certain whether they use standard Microsoft user interface features . . . ." and then reverts back to his original report; point 4 lists more websites; point 5 vaguely states, "[a]n additional software tool might be needed to support full operation via voice recognition software, depending on what operations are needed;" point 6 states he could not find information online or identify certain hardware or software; and point 7 confirms that "[w]ithout further information, one cannot say how much, if any, preparatory work would be needed to allow performance of such a suite of

8

tasks completely via voice recognition software." None of that improves upon the first report but, instead, confirms that his opinions leave more questions unanswered than answered. The second report certainly does not provide any opinions that are actually helpful, geared toward the issues in this case, verifiable, repeatable, or rooted in any form of science at all, let alone science in which Dr. Lewis himself has done any actual research beyond googling "voice recognition software."

## II. CONCLUSION

Wells Fargo respectfully requests the Court to exclude Plaintiff's expert, Dr. Clayton Lewis.

Respectfully dated this 22nd day of March, 2018.

        *s/ Michelle L. Gomez*
        Darren E. Nadel
        Michelle L. Gomez
        LITTLER MENDELSON, P.C.
        A Professional Corporation
        1900 Sixteenth Street
        Suite 800
        Denver, CO  80202
        Telephone:  303.629.6200
        Fax:  303.629.0200
        Email:  dnadel@littler.com
                mgomez@littler.com

        ATTORNEYS FOR DEFENDANT
        WELLS FARGO BANK

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March, 2018, I filed the foregoing using the Court's CM/ECF filing system which will send notice to all parties of record.

Nathan Davidovich
Davidovich Law Firm, LLC
3773 Cherry Creek North Drive
Suite 575
Denver, Colorado 80209
Telephone: 303.825.5529
Facsimile:  720.409.3668
Email:  nathandavidovich@talk-law.com

                                      *s / Meri Pincock*
                                      Meri Pincock

Firmwide:153305747.3 091367.1010