# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Civil Action No. 17-cv-1168-WJM-KMT

PATRICIA HOBDY,

    Plaintiff,

v.

WELLS FARGO BANK, National Association,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO
## STRIKE EXPERT DESIGNATION OF DR. CLAYTON LEWIS

    Plaintiff Patricia Hobdy ("Plaintiff" or "Hobdy") brings this disability discrimination and invasion of privacy action against her former employer, Defendant Wells Fargo Bank ("Defendant" or "Wells Fargo"). The Court recently denied summary judgment to Wells Fargo (*see* ECF No. 57) and the case remains set for a five-day jury trial commencing March 25, 2019 (*see* ECF No. 55). Currently before the Court is Wells Fargo's Motion to Strike Expert Designation of Dr. Clayton Lewis (the "Motion"). (ECF No. 41.) For the reasons set forth below, the Motion is granted.

## I. LEGAL STANDARD

    A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific,

> technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

An expert's proposed testimony also must be shown to be relevant and otherwise admissible. *See Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016). To be relevant, expert testimony must "logically advance a material aspect of the case" and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alterations incorporated).

## II. BACKGROUND

A detailed background of this case was set forth in the Court's recent order denying summary judgment and is not repeated here. (*See* ECF No. 57.) Familiarity with that factual background is presumed.[1]

In relevant summary, Hobdy suffers from carpal tunnel syndrome in both wrists, which allegedly made it difficult or impossible for her to type even after corrective surgery. Hobdy's ADA claims are predicated in part on a theory that lack of accommodation for her disability caused her to perform poorly at work. The parties

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination.

dispute whether Hobdy actually requested an accommodation of voice recognition software ("VRS"). Hobdy contends that VRS would have alleviated pain in her wrists and better allowed her to perform her job as an underwriter.

Pursuant to Federal Rule of Civil Procedure 26(a)(2) and Federal Rule of Evidence 702, Hobdy disclosed Dr. Lewis as an expert on VRS. (ECF No. 33 at 2.) Dr. Lewis provided a Report on November 30, 2017 and a Supplemental Report on February 22, 2018. (ECF Nos. 41-4 & 41-6.) Dr. Lewis's Report includes the following opinions: (1) "[s]peech recognition software is a common accommodation for people who are unable to use their hands"; (2) speech recognition programs, including Dragon, allow a user to control the computer's operating system and applications with speech commands; (3) the Microsoft Windows operating system includes built-in speech recognition support; (4) there are other tools on the market that allow a user to operate software using speech commands, even for software that is not compatible with Windows; (5) such additional software may require some set up; and (6) speech recognition tools are "readily available at reasonable cost." (ECF No. 41-4 at 1–3.)

In his Supplement Report, Dr. Lewis directly addresses whether certain software and hardware, presumably used by Wells Fargo, is compatible with VRS.[2] (ECF No. 41-6 at 1.) Specifically, Dr. Lewis opines that (1) Wells Fargo's system is Windows-based and many programs are Microsoft tools which can be accessed by the software

---

[2] It is unclear from Dr. Lewis's Supplemental Report or the other materials before the Court what the "list of software and hardware" considered by Dr. Lewis is a list *of*. (*See* ECF No. 41-6 at 1.) The Court presumes, at a minimum and based on context, that the list contains the names of software and hardware used by Wells Fargo. The Court is mindful that the proponent of expert testimony, once challenged, bears the burden of providing the foundational requirements of Rule 702 by a preponderance fo the evidence. *See Nacchio*, 555 F.3d at 1241.

3

discussed in the Report; (2) some programs appear to be Wells Fargo proprietary software and it is unclear whether they use standard Microsoft VRS interface features or would require additional VRS tools; (3) some programs used by Wells Fargo, including Brava!, Citrix Receiver, FAXCOM, Google Chrome, and ZenWorks are "keyboard accessible," *i.e.*, can be used by keyboard commands generated by voice recognition software without additional tools, and Adobe Acrobat Reader is keyboard accessible with exceptions; and (6) he could not determine the VRS accessibility of Bluerprint [*sic*] Print Scout, Micro Focus Reflection Desktop, Pulse Secure, Tanium client, PretonSaver, and CASA. (*Id.* at 1–2.)

Notably, Dr. Lewis concludes his Supplemental Report with the observation that it is unclear how the programs are actually used by Wells Fargo employees and thus he cannot opine on the preparatory work required to enable an employee to perform tasks entirely by VRS. (*Id.* at 2.)

### III. ANALYSIS

Wells Fargo moves to strike Dr. Lewis's expert opinion as unreliable and irrelevant. (ECF No. 41 at 6–7.) The Court will only address the relevancy argument because it is dispositive.

"[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is . . . relevant . . . ." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147 (1999) (expanding *Daubert* beyond scientific knowledge to all technical and other specialized expert knowledge). "Under the relevance prong of the *Daubert* analysis, the court must ensure

4

that the proposed expert testimony logically advances a material aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005); *see also Daubert*, 509 U.S. at 591; *Kumho Tire*, 526 U.S. at 150 ("The gatekeeping inquiry must be tied to the facts of a particular case."). Expert testimony must "fit" the case. *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1223 (10th Cir. 2016) (allowing expert testimony where the expert's qualifications were uncontested, opinions relied on specialized, not generalized, knowledge, and testimony addressed a central issue in the case). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.

Hobdy offers Dr. Lewis as an expert to opine on "whether a person who has impairment in the use of her hands could use voice recognition software to operate the specific software and hardware Plaintiff was required to use in her job as a Credit Underwriter at Wells Fargo." (ECF No. 46 at 1–2.) Hobdy offers this expert testimony to support certain elements of her claim that she would have been able to perform the essential functions of her job with a reasonable accommodation of VRS. (*Id.* at 1.)

However, Dr. Lewis provides only a very narrow opinion: he addresses only whether voice recognition software can be a reasonable accommodation for an individual with limited use of his or her hands, and whether certain Wells Fargo software and hardware are compatible with certain VRS technologies. (ECF Nos. 41-4 & 41-6.) Indeed, at his deposition, Dr. Lewis testified that he had never spoken to Hobdy, did not have any firsthand knowledge of whether she has difficulty typing or using her hands, and did not consider speaking to Hobdy important to his report. (ECF No. 41-7 at 5–6, 8.) Nor did Dr. Lewis review any medical records or doctor's notes.

(*Id.* at 7.) Dr. Lewis testified at his deposition that his report was not in any way geared towards Ms. Hobdy in particular. (*Id.* at 9.)

Thus, Dr. Lewis expresses no opinion on whether VRS would have allowed Hobdy to do her job at Wells Fargo. (ECF No. 41-4.) While an expert witness does not have to address every aspect of a claim, the lack of personalized consideration of Hobdy's need for and ability to use VRS tends to make Dr. Lewis's opinion less relevant, without additional evidence to connect his opinion to Hobdy and the facts of this case.

In addition, Dr. Lewis does not fully address whether VRS is compatible with Defendant's software and hardware. He observes that some of the programs appear to be Wells Fargo proprietary software, and others he cannot identify. (ECF No. 41-6 at 1–2.) Without understanding these programs, it is unclear whether the built-in Microsoft VRS would work, or whether a user would require an additional tool, such as the JitBit Macro Recorder. (*Id.*) Moreover, absent additional information, Dr. Lewis cannot provide an assessment of the preparatory work required to provide VRS access. (*Id.* at 2.)

Of even greater concern given the analysis here, Dr. Lewis never spoke with Hobdy to determine her workplace needs and the programs that she regularly used as an underwriter. (ECF No. 41-7 at 5.) At his deposition, Dr. Lewis professed to not having "any particular understanding of" Hobdy's position at Wells Fargo. (*Id.* at 8.) Nor did Dr. Lewis think it important to understand Hobdy's position because his expertise is in the "appropriateness of the technology for someone with difficulty typing."

(*Id.* at 6–7.)  Indeed, at his deposition, Dr. Lewis twice stated that his expertise and opinion solely concerned "the appropriateness of speech recognition technology for people with difficulty typing while using a computer."  (ECF No. 41-7 at 5–6, 9.)

Moreover, Dr. Lewis did not consult with anyone else to understand how a person in Hobdy's position used various Wells Fargo programs.  (*Id.* at 6 (stating that he only discussed the case with Hobdy's counsel and a colleague with expertise on VRS).)  Dr. Lewis's report states that he is unaware of "which programs are actually used in any particular suite of employee tasks."  (ECF No. 41-6 at 2.)  Absent an understanding of how Hobdy actually used Wells Fargo's software and hardware, Dr. Lewis opinion addresses only how VRS could *theoretically* be used with programs used by Wells Fargo.  It does not address, as Hobdy contends, the availability of VRS "to operate the specific software and hardware Plaintiff was required to use in her job as a Credit Underwriter at Wells Fargo."  (ECF No. 46 at 1–2.)

Thus, Dr. Lewis's opinion addresses only whether a person with limitations could use VRS to access some programs used by Wells Fargo.  But an expert opinion must be sufficiently tied to the *facts of a particular case*.  *Kumho Tire*, 526 U.S. at 150.  Dr. Lewis's expert opinion is neither connected to Hobdy's ability to use VRS to perform her job, nor does it address the ability to use of VRS to perform an underwriting job at Wells Fargo.  Absent a direct tie to the facts of the case, Dr. Lewis's opinion lacks the relevancy required by *Daubert*, *Kumho Tire*, and their progeny.  *See Kumho Tire*, 526 U.S. at 150.  The Court therefore grants Defendant's Motion.  Dr. Lewis will not be permitted to testify as an expert at trial.

## IV. CONCLUSION

For the reasons above, the Court ORDERS that Defendant's Motion to Strike (ECF No. 41) is GRANTED. This case REMAINS SET for a five-day jury trial to commence on **March 25, 2019**.

Dated this 8th day of January 2019.

BY THE COURT:

William J. Martínez
United States District Judge